Filed 5/14/26  P. v. Winn CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>KEVIN WINN,<br><br>     Defendant and Appellant. | A173361<br><br>(Solano County<br>Super. Ct. Nos. F2500260,<br>F2500338) |

This appeal is from judgments entered upon negotiated disposition in two cases following the trial court's denial of defendant Kevin Winn's request to be placed in pretrial mental health diversion.  Winn argues the trial court abused its discretion by conditioning his mental health treatment on his pleading guilty and by acting contrary to the purposes of the diversion statute as stated in Penal Code section 1001.35.[1]  He asks that we reverse his conviction and direct the trial court to permit him to withdraw his no contest pleas and grant his motion for pretrial diversion.

We find no indication the court abused its discretion.  Winn's own evaluating psychologist recommended intensive treatment for his severe drug

---

[1] Undesignated statutory references are to the Penal Code.

1

and alcohol dependency along with his mental health condition. As we read the record, the court denied Winn's diversion request because the treatment plan offered by the county's mental health experts was inappropriate for Winn's unique mental health needs, not because he declined to plead guilty. This finding was supported by substantial evidence and was consistent with the purposes of the diversion statute.

Accordingly, we will affirm.

## I. BACKGROUND

### A. *The Charges Against Winn*

In February 2025, the Solano County District Attorney charged Winn in a complaint filed in case number F25-00338 with felony receipt of stolen property, a car (§ 496d, subd. (a)).

Also in February 2025, the Solano County District Attorney charged Winn in a complaint filed in case number F25-00260 with felony making criminal threats that would result in death or great bodily injury (§ 422, subd. (a)); misdemeanor trespass (§ 602, subd. (m)); and misdemeanor possession of a smoking device (Health & Saf. Code, § 11364, subd. (a)).

It was alleged in both cases that Winn had been previously convicted of a serious and/or violent felony (§§ 667, subd. (d), 1170.12, subd. (b)), and committed his acts in an aggravated manner (Cal. Rules of Court, rules 4.408, 4.421). It was alleged in case number F25-00260 that Winn had previously suffered a conviction of a serious felony (§ 667, subd. (a)(1)).

### B. *Winn's Request To Be Placed in Pretrial Diversion*

In both cases, Winn filed a written request that he be placed in pretrial mental health diversion pursuant to sections 1001.35 and 1001.36.[2] His

---

[2] Winn also made this request in two other cases that are not part of this appeal, and which we have no need to discuss further.

diversion request states that the felony case was based on his allegedly driving a car that had been reported stolen, and that the misdemeanor case was based on his alleged trespass and threat to shoot someone if certain belongings were not returned to him, although there purportedly was no evidence Winn had a firearm. His request states that he "agrees to comply with treatment as a condition of diversion."

In support of his diversion request, Winn filed an eight-page evaluation of him by psychologist Brittany Cunningham, Ph.D., which Dr. Cunningham conducted at his counsel's request. Dr. Cunningham diagnosed Winn, then 40 years old, with "unspecified schizophrenia spectrum and other psychotic disorder," as well as "severe" use disorders of an "[a]mphetamine-type substance," an opioid, cannabis, cocaine, and alcohol.

Dr. Cunningham believed that in the weeks leading to his most recent arrest, Winn "was experiencing psychotic symptoms/mood instability (e.g., auditory hallucinations, paranoia, ideas of reference, delusions, grandiosity, confusion, agitation)." She reported that during her interview of him, his "[t]hought processes were somewhat tangential, perseverative, and mildly disorganized and he had to be redirected at times to respond to the questions. Thought content was characterized by mild delusional ideation, which appeared to represent residual symptoms of psychosis."

Winn told Dr. Cunningham that as an adult, he regularly used heroin, fentanyl, methamphetamine, and alcohol. When discussing the factors involved in his substance abuse, Dr. Cunningham reported, Winn's "thought process became somewhat disorganized and he presented with some residual delusional ideation." He said he " 'experimented' " with substances as part of a " 'spiritual journey' " in which he sought " 'mental stability,' " and referred on several occasions to his substance use as "medicinal." While he

3

acknowledged he was an addict, he also said he used substances as part of "the journey to find my lord and savior," and that "I choose addiction to get high on life praise my Lord Jesus Christ for keeping it . . . I relied on self-medication with drugs instead of pills to help my mental health."

Winn also told Dr. Cunningham that he began experiencing mental health symptoms in childhood and that he was first diagnosed with a psychotic disorder at 25 years of age while in the custody of the California Department of Corrections and Rehabilitation. He said he had experienced several psychotic symptoms since he was 21 years old and had been prescribed antipsychotic medication, which he had taken for a time while in the community. However, he had discontinued taking the medication as he began experiencing acute psychotic symptoms and engaged in substance use in October and November 2024. He had two prior psychiatric hospitalizations in 2023 and 2024. Also, he had successfully completed a mental health diversion program, apparently around 2018.

Dr. Cunningham concluded, among other things, that Winn was "in need of intensive substance abuse recovery treatment," and that "[c]ontinued substance recovery treatment that provides structure and support will help mitigate the potential for relapse . . . ." She made several recommendations, beginning with that Winn "participate in a substance recovery program to help him begin developing insight into his triggers for relapse, addictive thinking patterns, and frustration tolerance skills. . . . The severity and chronicity of his substance addiction is multifaceted and profound. He would likely benefit most from an intensive inpatient substance recovery treatment program to assist him in learning new methods for managing addiction patterns in the pursuit of long-term sobriety." She further recommended that he "undergo frequent drug screening and/or urinalysis testing to encourage

4

commitment to sobriety though accountability and monitoring." She also recommended that Winn be evaluated by a psychiatrist to optimize his medication regimen and address his "psychotic/mood symptoms, behavioral dysregulation, and substance dependence," and that he participate in individual psychotherapy.

The prosecution opposed Winn's diversion request in a pleading that the trial court indicated it could not find in its file and which is not in the record on appeal. The court referred to this opposition at the hearing on Winn's request.

## C. *The Forensic Triage Team Recommendation*

The court continued the hearing on Winn's diversion request to obtain a recommended treatment plan from the forensic triage team (FTT) of the Behavioral Health Services Division of the Solano County Department of Health & Social Services. The court specifically asked that FTT include a recommendation "that addresses . . . substance abuse dependence . . . ."

The FTT subsequently filed with the court a screening assessment and recommended treatment plan for Winn. After meeting with him via the Solano County Jail iWeb system, the FTT reported as follows: "[Winn] reported and exhibited symptoms of a psychotic and mood disorder. [He] reported full medication adherence. In addition, [he] reported symptoms consistent with a diagnosis of a substance use disorder." The FTT was prepared to refer Winn to psychiatric evaluation, and recommended that he be referred to "Rosewood CRT for additional symptom stabilization and medication monitoring," "take all medications and attend all psychiatric appointments," and "be referred for Endurance House Board and Care upon discharge from Rosewood CRT in conjunction with BACS SWIFT FSP services." According to FTT, "Winn agreed to participate voluntarily with

5

these mental health programs." The FTT did not make any recommendations regarding substance abuse treatment or testing.

### D. *The Court's Denial of Winn's Pretrial Diversion Request*

At the continued hearing on Winn's diversion request, the court observed that both Dr. Cunningham and the FTT indicated Winn had a drug and alcohol dependency, with Dr. Cunningham indicating his substance abuse issues were exacerbated by his psychiatric symptoms and were a factor in the weeks leading up to his latest arrest. The court further noted that Dr. Cunningham recommended that Winn be subject to substance testing and participate in an intensive inpatient substance abuse recovery treatment program, from which she thought he would likely benefit the most in light of his multifaceted and profound substance abuse, but that the FTT did not include any treatment for this aspect of Winn's condition.

Winn's counsel contended that Winn's placement in the FTT-recommended Endurance House would allow him to be in a "higher level" and "longer-term" residential mental health program. Endurance House, she said, was an "augmented board and care" facility in which residents could come and go as they pleased, with "some structure" and "mental health on staff," and was "much more intense and structured" than she anticipated. She also represented that Winn told her he "had a really great conversation with the FTT clinician" and was "really excited" about an Endurance House placement. She did not know that Endurance House conducted drug testing, and suggested the court could accept the FTT case plan if the court also included an intensive outpatient substance abuse treatment program with a testing component. She suggested one of two programs, Archway, or AK Bean, which, counsel said, "does have an intensive outpatient drug treatment program now" that was "daily"; she further represented that both programs did testing. Winn's counsel acknowledged that there seemed to be "a

6

difference of opinion" regarding whether Winn's psychiatric or drug and alcohol dependency issues were primary, an apparent reference to the different recommendations by Dr. Cunningham and the FTT.

The court found that Winn met the criteria for mental health diversion, but noted that "what in the end I have to decide is whether or not the treatment plan that's been proposed is appropriate." The court was "glad that Mr. Winn does seem to acknowledge that he has some issues that do need some attention. And that attention might include . . . a lot of structure, testing, as recommended by Dr. Cunningham. And, . . . I guess I am sort of struck [*sic*] on the idea that she thinks that there needs to be an intensive inpatient treatment program. And when you consider what the options are here, . . . I wouldn't have a problem granting probation with an intensive inpatient treatment program being part of probation.

"But I just think that with mental health diversion that this is just not an appropriate avenue for Mr. Winn given his profound issue as pointed out by Dr. Cunningham. I don't want him to get off this path. And I think sending him to mental health diversion would not be appropriate because there isn't enough structure. And, you know, even with the doctor who the defense here engaged to make this recommendation, her recommendations aren't being taken into account by FTT and Solano County Mental Health.

"So I am going to deny mental health diversion because I just don't think this is an appropriate treatment plan for Mr. Winn. As I said, I think there are resources that he could avail himself to if he chooses to, but that would be in the context of him potentially being on probation, assuming he's amenable to what Probation might suggest. I am glad that he knows he needs help. But I just don't think this gives him the best chance at succeeding and I don't think it is appropriate for that reason."

Asked by Winn's counsel if the court would be willing to reconsider its ruling if "mental health . . . would provide a dual diagnosis program" (apparently meaning one that treated both Winn's psychiatric and drug and alcohol dependency), the court said, "Sure."  It added, "I mean, I—you know a little bit more about the services that are available through FTT.  So if you are able to find something that is more in line with what Dr. Cunningham was talking about, I am happy to reconsider that."

### E. *The Negotiated Disposition of Winn's Cases*

A few days later, Winn's counsel told the court that the parties had reached a negotiated disposition of the case under which Winn would plead no contest to one count of felony receiving stolen property (§ 496d, subd. (a)) in case number F25-00338 and one count of misdemeanor making a criminal threat (§ 422) in case number F25-00260.  The court would sentence him to a low term of 16 months for receiving stolen property and a concurrent term of 176 days for making a criminal threat, and award Winn certain credits.  Winn would serve part of his term on mandatory supervision with treatment, which would include mental health court, the FTT treatment plan, and drug outpatient treatment as previously discussed with the court.  Winn would, when a bed became available, first spend two weeks at the Rosewood facility in order to stabilize and have his medication regimen set, and then go to Endurance House.  The court would order Winn to participate in "whatever treatment plan FTT recommends and then have check-ins with mental health court."

Winn's counsel described this proposal as "basically, kind of the same thing as mental health diversion, but after the plea while he is on mandatory supervision."  Winn would not give up his right to appeal the court's denial of his request to be placed in mental health diversion.

8

The parties and the court implemented this negotiated disposition. Counsel was unsure that Endurance House had any "drug components" and suggested Winn "would have to do an outpatient program through AK Bean or something." The court responded by ordering that Winn "participate in the Endurance House program and also any counseling and therapy as may be directed to address any substance issues if probation determines that to be appropriate." In addition, the court ordered that Winn "obey all laws" and "comply with all orders of probation." It further ordered that he "abstain from the use of illegal drugs and not possess drug paraphernalia," "submit to drug testing," consent to searches of his person and property, not own or possess weapons, and "attend and successfully complete counseling and therapy as may be directed by probation," including participation in the Endurance House program and any counseling and therapy "as may be directed to address any substance issues if probation determines that to be appropriate."

Winn filed timely notices of appeal, which include the court's grant of his requests for a certificate of probable cause regarding the court's denial of his diversion request.

## II. DISCUSSION

### A. *Legal Standards*

" 'Pretrial diversion' means the postponement of prosecution, either temporarily or permanently, . . . to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (f)(1).) "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (§ 1001.36, subd. (h).)

A defendant is eligible for pretrial diversion if he or she has been diagnosed with a qualifying mental disorder within the last five years and

9

the disorder "was a significant factor in the commission of the charged offense," which the court "shall find . . . unless there is clear and convincing evidence" otherwise. (§ 1001.36, subd. (b)(1)–(2).)

An eligible defendant is suitable for pretrial diversion if: "(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder . . . would respond to mental health treatment"; "(2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . ."; "(3) The defendant agrees to comply with treatment . . . ."; and "(4) The defendant will not pose an unreasonable risk of danger to public safety . . . if treated in the community." (§ 1001.36, subd. (c).)

In order to place a defendant in pretrial diversion, the trial court must be "satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." (§ 1001.36, subd. (f)(1)(A)(i); *Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 134 (*Vaughn*).) This provision "is not an additional eligibility or suitability requirement the defendant must meet. Rather, subdivision (f)(1) of section 1001.36 read as a whole appears to contemplate an ongoing assessment to assure that defendants will receive appropriate treatment for their particular conditions as part of the diversion program." (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 892.)

"[T]he statute gives the trial court discretion to deny diversion even if the statutory requirements are met: '[T]he court *may, in its discretion, . . .* grant pretrial diversion to a defendant' after the court considers the two eligibility and four suitability requirements. (§ 1001.36, subd. (a), italics added; see Assem. Com. on Public Safety, Analysis of Sen. Bill No. 215 (2017–2018 Reg. Sess.) as amended Jan. 25, 2018, p. 7 ['If a judge feels that a defendant's participation in a diversion program is not appropriate from the

10

standpoint of public safety, or any other reason, the judge can prohibit the defendant from participating in diversion.']" (*Vaughn*, *supra*, 105 Cal.App.5th at p. 134.)  Courts have referred to this judicial authority as the court's "residual discretion."  (*Id.* at p. 135.)  Among the discretionary factors the court may consider is whether the treatment plan available to a defendant upon a grant of diversion is appropriate to his unique needs. (§ 1001.36, subd. (f)(1)(A)(i).)

In exercising its discretion, the trial court "must consider the primary purposes of the mental health diversion statute as set forth in section 1001.35."  (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149 (*Whitmill*).) Section 1001.35 states the purpose of diversion is to promote all of the following:  "(a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders."

"The Legislature intended the mental health diversion program to apply as broadly as possible."  (*Whitmill*, *supra*, 86 Cal.App.5th at p. 1149.) If the court denies pretrial diversion as an exercise of its residual discretion, " 'its statement of reasons should reflect consideration of the underlying purposes of the statute and explain why diversion would not meet those goals.' "  (*Gomez v. Superior Court* (2025) 113 Cal.App.5th 671, 690.)

"Ultimately, . . . diversion under section 1001.36 is discretionary, not mandatory, even if all the requirements are met."  (*People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080.)  Thus, "[w]e review the trial court's denial of

11

mental health diversion for abuse of discretion." (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.) " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*People v. Gerson*, at p. 1080.) " 'It is appellant's burden on appeal to establish an abuse of discretion and prejudice.' " (*People v. Pacheco*, at p. 213.)

**B. *Analysis***

Winn argues the trial court abused its discretion in denying his request for pretrial diversion because it (1) lacked discretion to condition mental health treatment for him on his pleading guilty; (2) acted contrary to the purpose of the diversion statute by requiring that he plead guilty before he could receive outpatient substance abuse treatment; and (3) did not explain how its exercise of residual discretion was consistent with the legislative intent for diversion.[3]

None of Winn's arguments is persuasive. All of these arguments rest on the premise that the trial court conditioned his mental health treatment on his pleading guilty (technically, he pleaded no contest). But the record does not support this contention. The trial court found Winn suitable for pretrial diversion and carefully reviewed the recommendations of the mental health professionals presented to it. It concluded FTT's recommended treatment plan for Winn's pretrial diversion did not meet his unique needs and rejected his request for pretrial diversion on that basis. Its conclusion

---

[3] Winn also argues that the court abused its discretion if it premised its denial of diversion on public safety grounds. The court did not do so and, therefore, we do not discuss this argument further.

was supported by substantial evidence, and was consistent with the purpose of the diversion statute.

Specifically, the court's comments at the hearing on Winn's diversion request indicate it placed great weight on Dr. Cunningham's report—submitted by Winn's defense—which emphasized the need to intensively treat Winn's severe and chronic substance addiction, together with the FTT-recommended treatment plan, which offered treatment for Winn's psychiatric disorders only. Based on Dr. Cunningham's report, the court found the FTT-recommended treatment plan inappropriate to meet Winn's unique mental health needs.

Dr. Cunningham's report provides ample support for the court's conclusion. Winn has a long history of severely abusing several substances as an adult. Moreover, his comments to Dr. Cunningham during her interview of him indicate he has a deep and ongoing commitment to abusing these substances, seeing them as part of his spiritual journey and religious commitment and as medicinal, even though he acknowledged his addiction to Dr. Cunningham. The court had significant reason to conclude from Dr. Cunningham's report that her recommendation—that Winn be placed in an intensive inpatient substance abuse recovery treatment program with structure and support, and undergo frequent drug testing—was the appropriate placement for Winn in pretrial diversion. The FTT-recommended treatment plan contained none of this substance abuse treatment. The court acted within its discretion to conclude it was, therefore, inappropriate for Winn's pretrial diversion. (§ 1001.36, subd. (f)(1)(A)(i) [court must be "satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health

13

treatment needs of the defendant"]; *Vaughn*, *supra*, 105 Cal.App.5th at p. 134.)

Further, the court's conclusion was consistent with the purposes of pretrial diversion as stated in section 1001.35. These purposes include that "diversion . . . meets the unique mental health treatment and support needs of individuals with mental disorders." (1001.35, subd. (c).)

Winn contends the trial court abused its discretion because it was only willing to allow him mental health treatment after he pleaded guilty and was placed on probation, and because it considered Winn unsuitable for treatment unless he was convicted and placed on probation. He further contends the court's inappropriate conditioning of treatment on his conviction is demonstrated by the fact that after Winn pleaded no contest and was sentenced to mandatory supervision, the court ordered him to have treatment that was, essentially, what Winn's counsel proposed to the court at the hearing on Winn's diversion request.

That is an overstatement of what we see in the record. The trial court did note at Winn's diversion request hearing that additional resources could be available to Winn if he were placed on probation, but that is all. It stated no conditions and evaluated the FTT-recommended treatment program based on its appropriateness for Winn in pretrial diversion alone. Indeed, proof of the court's proper focus is its comment to Winn's counsel that it was "happy to reconsider" its ruling if counsel could find a dual-diagnosis program (meaning one that addressed both Winn's psychiatric and substance use disorders) available through FTT that was "more in line with what Dr. Cunningham was talking about."

As for the purported similarity of the mental health treatment ordered by the court and his counsel's proposal at his diversion request hearing, Winn

14

makes much of his counsel's suggestion that the court accept the FTT-recommended treatment program and add the requirement that Winn attend an intensive outpatient program with testing for his substance use disorders, such as Archway or AK Bean. But Winn fails to show that his counsel provided anything to the court showing that the FTT agreed these programs were appropriate and available for Winn's treatment as part of pretrial diversion. Nor does he cite any authority suggesting the court was required to order a change to the treatment plan presented to it without any factual showing that such a change was feasible. As a result, he has not met his appellate burden of showing an abuse of discretion and prejudice flowing therefrom. (*People v. Pacheco, supra*, 75 Cal.App.5th at p. 213.)

Second, even if we assume for the sake of argument that the FTT would and could make one of his counsel's suggested outpatient programs available in pretrial diversion, there is substantial evidence to support the rejection of the suggestion. The FTT-recommended pretrial diversion was to place Winn at Endurance House, a mental health treatment program that, as his counsel described it to the court, provided some internal structure but nonetheless allowed Winn to come and go as he pleased. And an outpatient substance abuse treatment program, however intense, would be unable to treat and test Winn if he decided not to participate. The court could reasonably conclude that these programs combined were not sufficiently structured to give Winn a chance of successfully learning to manage his multiple disorders in pretrial diversion.

That the court ordered Winn to engage in a mandatory supervision program purportedly similar to the one his counsel suggested at his diversion request hearing is not proof of the trial court's abuse of discretion either. First of all, the court ordered substance abuse treatment that was not

15

necessarily "the same"; his counsel suggested two particular outpatient programs at Winn's diversion request hearing, while the court at sentencing simply ordered Winn to "submit to drug testing" and participate in "any counseling and therapy as may be directed to address any substance issues if probation determines that to be appropriate." Even if the programs were akin to the one proposed by counsel, as we have discussed, Winn has failed to establish on appeal that the trial court abused its discretion in rejecting his counsel's suggestion for pretrial diversion outpatient treatment and, moreover, the court's pretrial diversion order was independent of any mandatory supervision orders.

Winn relies heavily on *Whitmill*, *supra*, 86 Cal.App.5th 1138 in arguing the trial court abused its discretion here. There, a psychologist who evaluated defendant Whitmill concluded he suffered from a severe mental illness further complicated by substance abuse, that this illness was a significant factor in the charged offense and would be amenable to treatment, that he had benefitted from treatment in the past, and that he would not pose an unreasonable risk to public safety if treated in the community as long as he abstained from substance abuse. (*Id*. at pp. 1144–1145.) The psychologist recommended a dual-diagnosis treatment program that addressed both his psychiatric disorder and substance abuse. (*Id*. at p. 1145.) The prosecution opposed Whitmill's diversion motion on the ground that he was a threat to public safety and could not be safely treated in the community. (*Ibid*.)

The trial court denied the motion on the ground that, unlike in *People v. Moine* (2021) 62 Cal.App.5th 440, which held a denial of a defendant's diversion request for risk of danger to public safety was an abuse of discretion, the evaluating psychologist did not find that Whitmill posed a *low* risk to public safety. (*Whitmill*, *supra*, 86 Cal.App.5th at p. 1146.) Further,

16

Whitmill's jail history and his gun use in the charged offense indicated he was likely to commit a super strike offense and posed an unreasonable risk of danger to public safety. (*Id*. at pp. 1146–1147.) The trial court thought it would be "unreasonable" to expect Whitmill to exercise sufficient control over his behavior if treated in the community. (*Id*. at p. 1146.)

The appellate court reversed. It agreed with Whitmill that there was no substantial evidence that he "pose[d] an unreasonable risk to public safety or . . . would commit a new violent super strike," or that it would be unreasonable to expect him to exercise sufficient control over his behavior in the community. (*Whitmill*, *supra*, 86 Cal.App.5th. at pp. 1150–1151.)

Most relevant to Winn's analysis here, the appellate court also held that the trial court had applied the wrong standard in denying Whitmill's diversion. It wrote, "Here, the trial court stated: '[W]hat I have here is a defendant who had three years in the county jail suspended. And that's designed to create a strong disincentive to commit any new crime. That does not give me great confidence.' As already noted, the Legislature intended mental health diversion to be applied as broadly as possible. [Citation.] We find nothing in the diversion statute suggesting the Legislature intended to give courts discretion to deny diversion simply because diversion is or may be less motivating than probation or prison. The trial court appeared to be grafting on a seventh element that defendants show they do not need to be additionally motivated. The trial court's conclusion that diversion is insufficiently motivating is simply a challenge to the underlying premise of diversion itself." (*Whitmill*, *supra*, 86 Cal.App.5th at p. 1155.) Winn contends the trial court's ruling here effectively undermined the purposes of the diversion statute for the same reason.

Winn's argument fails because the trial court's focus was not on Winn's inclination to commit crimes or motivation—of which it made no direct or indirect reference—but, rather, on the appropriateness of the treatment plan proposed for him to treat his multiple disorders. This focus is consistent with the purposes of the diversion statute. Moreover, substantial evidence supports the trial court's conclusion that the proposed treatment plan was inappropriate, and there is no evidence that a residential dual-diagnosis program was possibly available. For all of these reasons, *Whitmill* is inapposite.

Shortly before oral argument, Winn brought to our attention a recent Court of Appeal opinion in *People v. Tourville* (May 5, 2026, B338176) ___Cal.App.5th___ [2026 WL 1223627], which he contends is another case, like *Whitmill*, where a trial court was reversed for denying section 1001.36 diversion to a defendant who met all the qualifying criteria for diversion under that statute. The appellate court found an abuse of discretion because, despite the defendant's eligibility for diversion, the trial court preferred an option in which he received the same therapeutic treatment contemplated for him if diversion was granted, but while on probation, thus effectively conditioning therapeutic treatment on a plea of guilty or no contest. That case, too, is distinguishable. It was undisputed in *Tourville* that the diversion treatment plan available to the defendant, a military veteran—described as "Veterans Affairs Domiciliary Residential Rehabilitation Program . . . , which would provide dual-diagnosis treatment and medical services" (*id*. at p. *3)—was adequate for the defendant's needs.

Finally, Winn argues that the trial court abused its discretion because it did not "explain" how its exercise of discretion was consistent with legislative intent. Here, Winn misstates the standard required of the trial

18

court.  As we have discussed, if the court denies pretrial diversion as an exercise of its residual discretion, "its statement of reasons should *reflect* consideration of the underlying purposes of the statute and explain why diversion would not meet those goals.' " (*Gomez v. Superior Court*, *supra*, 113 Cal.App.5th at p. 690, italics added.)  As we have also already discussed, the court's focus on the appropriateness of the FTT-recommended treatment plan for Winn in pretrial diversion demonstrates proper consideration of the purposes of the pretrial diversion statute.  Nothing more was required.

For all these reasons, we conclude the trial court did not abuse its discretion in denying Winn's request for pretrial diversion.

## III. DISPOSITION

The judgments are affirmed.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
SWEET, J.*

---

* Judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19